**Larry Davis FURTICK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 58480.**

Court of Criminal Appeals of Texas, Panel No. 1.

Jan. 23, 1980.

Michael W. Hubbard, Tyler, for appellant.

Timothy D. Eyssen, Dist. Atty., Donald E. Maxfield and Dan Tompkins, Asst. Dist. Atty., Wichita Falls, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and DOUGLAS and W. C. DAVIS, JJ.

OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder. The jury assessed punishment at fifty years.

The evidence shows that Furtick killed Leopoldo Galvan, his stepchild. He contends that the court erred (1) in admitting his confession, (2) in admitting certain photographs, and (3) in failing to grant a mistrial after withdrawing what appeared to

be blood and vomit stained exhibits. We overrule these contentions and affirm.

Furtick was arrested on May 8, 1975, by Officer McMullen of the Wichita Falls Police Department in the parking lot of Sheppard Air Force Base Hospital. The victim, a baby, had just been admitted to the hospital where he died from severe injuries to his head, arms, legs, genitalia and feet. McMullen gave Furtick the *Miranda* warnings, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Furtick responded by asking when the baby had died. There was no further interrogation of appellant.

The next morning, May 9, Furtick was taken before Justice of the Peace R. L. Stewart where he was advised of his rights as required under article 15.17, V.A.C.C.P. Judge Stewart testified that, if an accused requests an attorney, the request is noted on the magistrate's certificate to voluntary confession. Judge Stewart stated that Furtick must have requested an attorney because that notation was made on the certificate. On cross-examination by the State, Judge Stewart stated that he had no independent recollection of the request.

Officer Wilson of the Wichita Falls Police Department testified that he and Officer Smith were with Furtick when Judge Stewart recited the warnings. Wilson stated that he never heard Furtick request an attorney.

After the magistrate's warnings, Furtick was asked about the incident by Officers Wilson and Sloan. Furtick was warned again of his rights. No request was made for an attorney nor was any written statement taken. Furtick requested only that he be allowed to talk to his father. This request was granted.

On May 11, 1975, Officer Collazo of the Wichita Falls Police Department questioned Furtick for about thirty minutes after first warning Furtick of his constitutional rights. During the questions Collazo asked if Furtick had retained an attorney. Furtick replied that his father, a Mississippi deputy sheriff, was taking care of it. After the questioning, Furtick asked that Collazo be present that afternoon when Furtick met with his father. At 7:00 p.m. that night, all three men met for another interview which lasted about an hour.

Collazo testified that he next questioned Furtick the following morning, May 12, 1975. Furtick had written out a statement overnight and had given it to his father, who in turn passed that statement on to Collazo. Collazo warned Furtick again and asked Furtick to take a polygraph test, warning him that he need not take the test. Furtick acceded and took the polygraph. After the test, Furtick told Collazo "that he wanted to tell the truth about it." That afternoon, he gave a tape recorded statement to Officers Collazo and Wilson. According to Officer Collazo, Furtick never requested that the interview be stopped. Collazo asked him several times if he had an attorney. Furtick replied that he did not, but that his father would take care of that. Furtick wanted only to speak to his father before the statement was reduced to writing. Collazo testified that he also talked with Furtick's father who indicated that he and his son had discussed retaining an attorney. They, according to Collazo, saw no need to waste the money.

The next morning, May 13, 1975, Furtick was given a transcription of the tape recorded statement and warned again of his rights. Furtick signed the statement in Collazo's presence.

Furtick argues on appeal that this written statement was inadmissible because it was given without the aid of counsel after Furtick had requested counsel. See *Miranda v. Arizona*, supra; *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1973). Assuming that Furtick did request counsel, we hold that, based on the totality of the circumstances, he waived the right to an attorney.

The choice of a defendant to waive his right to remain silent and to have counsel present during questioning must be determined upon the totality of the circumstances. *Williams v. State*, 566 S.W.2d 919 (Tex. Cr.App.1978). The waiver need not be express but may be found in the circumstanc-

**618**

es surrounding the confession. *Moreno v. State*, 511 S.W.2d 273 (Tex.Cr.App.1974); *Thomas v. State*, 458 S.W.2d 817 (Tex.Cr. App.1970).

In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the defendant was arrested, given the *Miranda* warning and was interrogated. Mosley asked that the interrogation cease, which it did immediately. Several hours later, Mosley was interrogated again by a different police officer after being warned again of his rights. This time, the defendant confessed to the crime. The Court held that the incriminating statement made under these circumstances did not violate the principles of *Miranda*. See also *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Appellant's contention is overruled.

■ Furtick also argues that the trial court should have excluded certain photographs of the victim which were labeled with the victim's name because those labels constituted hearsay. Twenty-one photographs were introduced into evidence. Of those, only Exhibits 2, 3, 4 and 6 contain a label identifying the body as that of Leopoldo Galvan, the victim. These photos were introduced through the testimony of Dr. Harris Melsher, the physician who first examined the victim at the hospital. Dr. Melsher identified the pictures as being those of Leopoldo Galvan's body. The same pictures were identified as those of Galvan by Dr. Sussman, who performed the autopsy and who testified without objection. Further, Furtick confessed to causing the injuries that resulted in Galvan's death. Viewing the evidence in a light most favorable to the verdict, we find there was sufficient evidence, independent of Dr. Melsher's testimony, to sustain the identification of Leopoldo Galvan as the victim. Cf. *Murray v. State*, 505 S.W.2d 589 (Tex.Cr.App.1974).

■ The State introduced into evidence two white bath towels, a green bath mat and a heat register grill. All four pieces of evidence exhibited stains which resembled blood and vomit. After the introduction of the evidence, it was determined that no analysis of the stains had ever been conducted. The evidence was withdrawn and the jury instructed to disregard it. Furtick's motion for mistrial was overruled.

Appellant argues that the failure of the court to grant this motion for mistrial constitutes reversible error.

If any error was committed, the court's prompt action in withdrawing the exhibits and instructing the jury to disregard them made it harmless. *Sternlight v. State*, 540 S.W.2d 704 (Tex.Cr.App.1976); *Smith v. State*, 540 S.W.2d 693 (Tex.Cr.App.1976). This contention is overruled.

The judgment is affirmed.