Gerardo Garcia MERAZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–84–00373–CR.

Court of Appeals of Texas,
El Paso.

July 18, 1986.

Rehearing Denied Aug. 28, 1986.

Charles Mallin, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and OSBORN and SCHULTE, JJ.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This is an appeal from convictions for aggravated sexual abuse and injury to a child. The jury found the Appellant guilty of both offenses and sentenced him to eighteen years confinement for the offense of aggravated sexual abuse and eight years for the injury to a child offense. Prior to trial, a jury determined that the Appellant was competent to stand trial. The principal question in this case is the standard of review on the issue of competency to stand trial where the ground of error is that the finding of the jury is against the great weight and preponderance of the evidence. We reverse and remand for a new trial on the basis that the finding of the jury that Appellant was competent to stand trial is against the great weight and preponderance of the evidence.

A defendant has the burden to prove his incompetency to stand trial by a preponderance of the evidence. *White v. State,* 591 S.W.2d 851, 854 (Tex.Crim.App. 1979); Tex.Code Crim.Pro.Ann. art. 46.02, sec. 1(b) (Vernon 1979). At the competency hearing, the court's charge instructed the jury that a person is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence. The term " 'preponderance of the evidence' as used in this charge, means the greater weight and degree of credible testimony or evidence introduced before you and admitted in evidence in this case." The question was then presented to the jury, "[d]o you find from a preponderance of the evidence that the defendant is presently incompetent to stand trial?" By Ground of Error No. One, Appellant assigns error in that the finding of the jury that he was competent is against the great weight and preponderance of the evidence.

In making that determination, the jury was acting under the court's instruction, "[a] person is incompetent to stand trial if he does not have: (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him."

Dr. Salvador Aguirre, board certified psychiatrist and professor of psychiatry at the Texas Tech University College of Medicine, testified that, after several examinations of the Appellant and a review of his past medical records, Appellant had a diagnosis of a form of paranoid schizophrenia and, bearing in mind the definition of incompetency under Texas law, it was his opinion that Appellant was not competent and did not have a rational understanding of the proceedings against him. Furthermore, he gave a detailed analysis of the

mental disease which Appellant was suffering from and the various hallucinations and symptomatology of the Appellant. Dr. Aguirre was of the further opinion that the Appellant was not faking his mental illness, and that his past medical history revealed that he had been suffering from paranoid schizophrenia since the time he was of the age of fourteen years. Medical records introduced into evidence and considered by Dr. Aguirre in forming his opinion that the Appellant was incompetent were (1) medical psychiatric records from Thomason General Hospital wherein the Appellant was diagnosed as suffering from paranoid schizophrenia, (2) the psychiatric records of the Veterans' Administration, El Paso office, where the Appellant was diagnosed as a paranoid schizophrenic, (3) Veterans' Administration from Waco, Texas, the same diagnosis of paranoid schizophrenia, and (4) psychiatric records from the El Paso State Center where the Appellant was diagnosed as having paranoid schizophrenia. The records thus reveal that the Appellant had been committed several times, beginning around the age of fourteen years, with the diagnosis of paranoid schizophrenia with each commitment, to one of the medical facilities or mental hospitals. Dr. Aguirre further testified that the Appellant suffered from hallucinations, believed that the whole world was against him and people were trying to kill him, that he lived in a world of his own, and everything outside was harmful or potentially harmful to him, and in this case, he felt that the assistance of his lawyer was a very act that wanted to harm him. Dr. Aguirre had seen the patient more than a month before trial and saw him again briefly before the trial, and he was unequivocal in his opinion that the Appellant was incompetent as defined under Texas law and that he did not have a rational understanding of the proceedings against him.

Dr. Briones, a psychiatrist certified by the American Board of Neurology and Psychiatry, testified that he was the author of a certificate of mental examination of the Appellant which states that the Appellant has a mental disorder and requires observation, treatment and hospitalization. He testified to having made examinations of the Appellant and that at his request he was examined by a Dr. Johnson, a psychologist, and that Dr. Johnson had critical results regarding the Appellant's ability to communicate with a rational degree of understanding; that Dr. Johnson felt that he was incapable of participation on his own; that there was some question about how impaired he was and that for that reason he, Dr. Briones, spent a lot of time with him in regard to competency. He felt initially he was competent, but on the basis of more recent interviews he determined that he was not competent. Dr. Briones thought the Appellant was competent in December; in June, he thought he was not competent. At the time of this hearing on July 23, he was of the opinion that he was not, although he found him able to relate, to answer questions and participate in an interview, and that he knew he was in a courtroom but he still had some confusion about the hearing. The State called no witnesses, but relied on cross-examination which brought out the fact that the Appellant was in the Marine Corps for three years, possibly of the rank of lance corporal; that he completed his service term satisfactorily or at least received a normal discharge; that the Appellant's occupation was equipment operator and inferentially that an individual normally would have to be able to communicate and comprehend in order to perform satisfactorily at that job; and that the medical records which the doctors had examined were not formed for the specific purpose of competency but rather they dealt with the mental disease. The question was also raised as to whether the Appellant was faking his illness or attempting to magnify it, and one of the doctors testified that "[n]ow that I recall, he does mention he is trying to make his illness look more ridiculous than it is." Dr. Aguirre said there is no psychiatric test which can be employed to determine whether an individual is giving fake responses, that psychologists have such a test but that it was not administered to the Appellant.

Dr. Briones testified that on the day of the competency hearing Appellant was able to relate, answer questions and participate in the interview, and that he knew his lawyer.

■ The evidence in support of the jury findings can be extracted from the above to be that he knew who his lawyer was; he mentioned he was trying to make his illness look more ridiculous than it was; there might be incentive for persons facing charges to fake their results; there was no psychiatric test which could be employed to determine such faking; one of the doctors at one time thought the Appellant was competent; on the day of the competency trial Appellant was able to relate, answer questions and participate in an interview; he knew he was in a courtroom; that the Appellant was in the Marine Corps for three years and completed his service term satisfactorily or at least received a normal discharge; the Appellant's occupation was equipment operator and an individual normally would have to be able to communicate and comprehend in order to perform satisfactorily at that job. That evidence and the inferences to be drawn from it amounts to some evidence of competency.

When that evidence is extracted from the whole, that which remains greatly outweighs it. The evidence all came from only two witnesses, so there is no question of whom to believe. Both were experts in their field and had examined the past, long medical records of the Appellant. They had interviewed him and examined him over a period of time and were each adamant in their diagnosis and opinion that he was not competent to stand trial. As to the possible faking, Dr. Aguirre was of the opinion that he was not faking and the various medical records were all in agreement that he had a form of paranoid schizophrenia since he was of the age of fourteen years. The fact that Appellant knew his lawyer and knew he was in the courtroom does not prove that he had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or that he had a factual understanding of the proceedings against him;

but the evidence was that he had been under treatment and medication at the time of trial. Also, it was the doctor's opinion that he was not competent and did not have a rational understanding of the proceedings against him, and that on the day of trial he "still has some confusion about this hearing." Added to that is the fact that he felt that the assistance of his lawyer was the very act that wanted to harm him. We admit to ineptness in setting out in analyzing it, but our review of the entire record leads to the conclusion that the finding of the jury is against the great weight and preponderance of the evidence. If we are right in that conclusion, then a manifestly unjust result was reached by the jury in this case, and Appellant is entitled to another trial.

■ The error assigned is that the finding is against the great weight and preponderance of the evidence on the issue of competency to stand trial. The State argues that this Court cannot consider the fact question of great weight and preponderance of the evidence under recent decisions of the Court of Criminal Appeals. In *Van Guilder v. State*, 709 S.W.2d 178 (Tex. Crim.App. Nov., 1985); *Schuessler v. State* (Tex.Crim.App. 289-83, February 5, 1986); *Baker v. State*, 707 S.W.2d 893 (Tex. Crim.App.1986), the Court of Criminal Appeals has held that the Texas Constitution and the Code of Criminal Procedure do not confer jurisdiction on the courts of appeals to consider great weight and preponderance questions in cases involving the affirmative defense of insanity.

The courts of appeals are caught in a conflict between those holdings of the Court of Criminal Appeals and the legion of cases to the contrary by the Supreme Court of Texas. The situation requires an examination of the jurisdiction of the courts of appeals.

Article 5, Section 6 (Vernon Supp.1986) of the Texas Constitution prescribes the jurisdiction of the courts of appeals and says "[p]rovided, that the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or

error." Article 5, Section 4, and Article 5, Section 5, set out the jurisdictions of the Supreme Court and the Court of Criminal Appeals respectively. Thus, the jurisdiction of the three courts is spelled out in separate sections with this fact finding jurisdiction lodged in the courts of appeals only. Each portion of the constitution is equal to the other. None can be ignored. "Article 5, Sec. 6 of the Constitution, Vernon's Ann.St., is no more to be ignored than any other part of that document, ...." *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). The fact finding jurisdiction is lodged in the courts of appeals. It is an affirmative grant of jurisdiction. When the constitution expressly grants jurisdiction over a particular subject matter to a particular court and not to another, then it is presumed that the jurisdiction so conferred is exclusive. *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979). The defendant is entitled to this review of the sufficiency of the evidence under the Code of Criminal Procedure and the constitution and we are bound to afford him a review of his point of error. It is a due process right as such is defined. *Skelton v. State*, 655 S.W.2d 302, at 304 (Tex.App.—Tyler 1983, PDRR); *Van Guilder, supra.* Nor can it be altered or changed by legislative enactments as is reasoned in *Minor v. State*, 657 S.W.2d 811 (Tex.Crim.App.1983), and *Van Guilder, supra.* This, because the legislature cannot withdraw jurisdiction given a court by the constitution. *Reasonover v. Reasonover*, 122 Tex. 512, 58 S.W.2d 817 (1933); *Lord v. Clayton*, 163 Tex. 62, 352 S.W.2d 718 (1961).

The provision of Article 5, Section 6, has been a part of our constitution since 1891. Twice, the citizens of this state have in the process of amending the constitution reenacted or retained it. Importantly, these reenactments have come with and since the courts of appeals were given criminal jurisdiction. An even more important fact is that the last reenactment came (November 1985) at a time when it served to ratify three courts of appeals cases holding that the courts of appeals had jurisdiction to consider great weight and preponderance of the evidence questions in cases involving the affirmative defense of insanity. *Van Guilder v. State*, 674 S.W.2d 915 (Tex.App.—San Antonio 1984), *rev'd*, 709 S.W.2d 178 (Tex.Crim.App.1985), *Schuessler v. State*, 647 S.W.2d 742 (Tex.App.—El Paso 1983), *aff'd* (Tex.Crim.App. 289-83, February 5, 1986), and *Baker v. State*, 682 S.W.2d 701 (Tex.App.—Houston [1st Dist.] 1984, no pet.), are the cases involved. These cases were on the books and a known part of our jurisprudence when the electorate reenacted Article 5, Section 6, in November, 1985. Thus, the electorate gave its approval of the court of appeals' application of Article 5, Section 6, provisions to the criminal law. It is a principle of law that such action by the electorate shows that no departure from that practice was intended. *White v. Sturns*, 651 S.W.2d 372 (Tex.App.—Austin 1983, writ ref'd n.r.e.). We conclude that the jurisdiction of the courts of appeals to consider the fact question of the great weight and preponderance of the evidence in this instance exists by the terms of the constitution independent of court decisions.

The cases are legion upholding and invoking the jurisdiction of the courts of appeals under Article 5, Section 6, since the creation of those courts in 1891. An early case is *Choate v. San Antonio & A.P. Ry. Co.*, 91 Tex. 406, 44 S.W. 69 (1898), and the latest is *Pool v. Ford Motor Company*, 29 Tex.Sup.Ct.J. 301, 715 S.W.2d 629 (1986). In the *Pool* case, the court made an exhaustive examination of the question and concluded, "[t]he right of the courts of appeals to review for factual insufficiency must continue undisturbed." The opinion quotes from one of the "often cited" cases before the court, *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), "[b]ut Article 5, Sec. 6 of the Constitution, Vernon's Ann.St., is no more to be ignored than any other part of that document, and that provision with the decisions, statutes and rules based upon it, requires the Court of Civil Appeals, upon proper assignment, to consider the fact question of weight and

preponderance of all the evidence and to order or deny a new trial accordingly as to the verdict may thus appear to it clearly unjust or otherwise." *Choate* and *In re King's Estate* and their progeny have repeatedly held for nearly a hundred years that the courts of appeals are "required" to consider the fact question of weight and preponderance of the evidence upon proper assignment. Said the Supreme Court in the *Pool v. Ford Motor* case, that as to factual insufficiency, *"In re King's Estate* mandated those courts to consider and weigh all of the evidence in the case in determining whether the evidence is insufficient or if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust." On the same date as the original *Pool v. Ford Motor* case, February 12, 1986, the Supreme Court in a per curiam opinion again wrote the standard for our review, "[w]hen reviewing a jury verdict to determine the factual sufficiency of the evidence, the court of appeals must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." [Cited authorities omitted.] *Cain v. Bain,* 29 Tex. Sup.Ct.J. 214, 709 S.W.2d 175 (1986).

The Court of Criminal Appeals has in the three cited cases of *Van Guilder, Schuessler* and *Baker,* held that the courts of appeals do not have jurisdiction to consider great weight and preponderance of the evidence fact questions in cases involving the affirmative defense of insanity. Said the court in *Schuessler* and reiterated in *Van Guilder:*

> "To allow the Court of Appeals to evaluate the facts in a criminal case and to reverse based on their individual belief that a jury finding is against the great weight and preponderance of the evidence both misconceives the burden of proof required for criminal convictions and usurps the function of the jury. In effect, this would make the Courts of Appeal a thirteenth juror with veto power. Neither the Texas constitution nor

*Combs [v. State ]* supra, [643 S.W.2d 709 (Tex.Cr.App.1982) ], supports such a standard of review."

. . . . .

The standard of review to be used in criminal cases where the sufficiency of the evidence to support the conviction is challenged was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In that case the United States Supreme Court required that in reviewing the sufficiency of the evidence to support a criminal conviction, all the evidence be viewed in the light most favorable to the verdict with the appellate court limiting its inquiry to whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. And said the Court of Criminal Appeals under *Schuessler, supra* (advanced sheet p. 5), the *Jackson* standard of review is binding on the states as a constitutional minimum of protection for criminal defendants. And ruled the court, "[t]hus, the Courts of Appeals are limited to a legal sufficiency analysis when reviewing the evidence in any criminal case. Anything less offends the principles established in *Jackson,* supra, and discussed in *Combs,* supra, and *Wilson [v. State,* 654 S.W.2d 465 (Tex. Cr.App.1983) ] supra." In the question being considered before us, the constitutional minimum is not involved: first, because we are not passing on the criminal phase of the trial, that is, the guilt or innocence finding, and second, because the preponderance of the evidence test is a less onerous burden than the beyond a reasonable doubt. *State v. Turner,* 556 S.W.2d 563 (Tex.1977). Hence, there is no violation of a minimum standard when the burden imposed is a less onerous one. The thirteenth juror argument is not too convincing in view of its conflict with the constitution, numerous statutes and rules of procedure. All courts in Texas have some form of power to overcome jury verdicts. Trial courts can grant judgments non obstante veredicto, or they can grant a new trial (and such action is not even appealable). Courts of appeals, the Court of Criminal

Appeals and the Supreme Court reverse jury findings of the facts. The Code of Criminal Procedure by Article 44.24(b) provides that the courts of appeals or Court of Criminal Appeals "may affirm the judgment of the court below, or may reverse and remand for a new trial, or may reverse and dismiss the case, or may reform and correct the judgment or may enter any other appropriate order, as the law and the nature of the case may require." And, Article 44.25 of the Code of Criminal Procedure provides that "courts of appeals ... may reverse the judgment in a criminal action, as well upon the law as upon the facts." That article was quoted with approval by the Court of Criminal Appeals in *Carter v. State*, 656 S.W.2d 468 (1983), in which it was held that a constitutional grant of appellate jurisdiction treats the right of appeal in criminal cases as a remedy to revise the whole case upon the law and the facts as exhibited in the record. This comports with the numerous holdings of the Texas Supreme Court as to the jurisdiction of the courts of appeals. As Judge Teague noted in his concurring opinion in *Van Guilder*, in commenting on the State's contention that the reviewing court cannot disturb a jury's findings, he said:

> This is simply not the law of this State and has never been the law of this State.
>
> The law, however, contrary to the State's assertion, is clear: No matter how reluctant this or any other reviewing court might be to set aside the verdict of a jury, it will not hesitate to do so when the evidence is found to be insufficient as a matter of law, ....

This case differs from *Van Guilder, Schuessler,* and *Baker* in that in those cases the defense was insanity at the time of commission of the crime and, here, the issue is incompetency to stand trial, a form of insanity at the time of trial. But, the question in those cases and the one before us is the same—the correct standard of review on appeal.

In our case, there are two trials: a competency trial, followed by the criminal trial of guilt or innocence. We are passing on an issue determined in the competency trial only. We are not passing on the issue of guilt or innocence of the crime. We are considering the evidence introduced in the competency trial and the record made at that trial. In that regard, we are bound in our review by the procedure that was used. It is what was prescribed by the legislature and used by the court, and it is not questioned on appeal. There being no assignment of error as to that, we are limited to the assignment made which is that the finding of the jury that he was competent to stand trial is against the great weight and preponderance of the evidence.

The jury that heard that case was not the one that determined the guilt and innocence trial, and it, under the court's charge with definitions of competency and great weight and preponderance of the evidence, finds the answer to the question of defendant's competency. For purposes of review, it probably makes no difference whether we label it a criminal trial or a civil trial. Its judgment settled a single question—the competency of an individual. Unless competency is a crime, this was not a criminal trial. In fact, no criminal trial follows if the competency question is answered for the defendant. As chief Judge Onion said in his concurring opinion in *Baker*, "the show is over. No one has to wait until the fat lady sings." Aside from any label of civil or criminal, the trial was a classic type of factual determination of the many civil cases controlled by the above discussed rulings in the *In re King's Estate* type cases. Those rulings control our disposition of this case.

This jurisdiction of the courts of appeals to determine both civil and criminal matters seems a logical answer to the long-standing problem of the needs for factual determination in certain aspects of criminal trials, like affirmative defenses, and, as in this case, where there were two trials, one civil and one criminal, but in the end it goes to the Court of Criminal Appeals. The Texas system of split jurisdiction of appeals between the criminal and civil creates problems, except for the fact that the courts of

appeals have this fact finding constitutional authority. One is reminded of the saying "Jack Sprat could eat no fact, his wife could eat no lean, so between the two of them, they licked the platter clean." The Supreme Court and the Court of Criminal Appeals are forbidden to eat from the same platter, but the dual jurisdiction of the courts of appeals in civil and criminal matters takes care of the situation. The due process rights of defendants are protected in that they can get review of all aspects of their trial. Due process might be lacking in such instance if final authority on fact questions were not lodged in the court of appeals. It would seem to be in keeping with the new rules jointly covering civil and criminal matters if the Court of Criminal Appeals, where possible, would review courts of appeals' opinions in the same manner that they are reviewed by the Supreme Court.

We have determined that we have jurisdiction to rule on Appellant's Ground of Error No. One, and having done so, it is sustained.

In Appellant's Ground of Error No. Two, he contends that the jury's verdict was contrary to the evidence as a matter of law. As set out in our discussion of Ground of Error No. One, there is some evidence of competency; therefore, Ground of Error No. Two must be overruled.

■■■ Appellant claims in his third ground of error that the trial court abused its discretion in denying Appellant a second competency trial. Abuse of discretion is the standard of review for refusal to allow a second competency hearing. In the situation where a jury has already properly found the defendant to be competent, "Appellant must put forth some evidence of a subsequent change in competency or some 'new evidence' in a manner analogous to the newly discovered evidence basis for new trial. Any other procedural and evidentiary framework would effectively block trial on the merits." *Miles v. State,* 688 S.W.2d 219, 224 (Tex.App.—El Paso 1985, PDRR). In the present case, the jury had determined Appellant's competency as of July 23, 1984. In Appellant's motion for a second competency hearing Appellant alleged the following:

(1) Counsel has attempted to conduct interviews and discussions with the Defendant on numerous dates during the months of May and June, 1984, at which time the Defendant was unable to communicate adequately with or assist counsel in the matters pertaining to the case that is the subject of this prosecution. Furthermore, the Defendant appeared not to have a rational or factual understanding of the proceedings against him.

(2) Defendant has a prolonged history of mental illness as will be evidenced by medical psychiatric records.

(3) Defendant's incompetency to stand trial has been substantiated by the finds [sic] resulting from an examination by Salvador Aguirre-Haughcaum, M.D. A report on his findings was previously filed with this Court.

The Appellant's first competency hearing was held subsequent to May and June, 1984. Dr. Aguirre's medical report was made prior to the first hearing, and both his testimony and Appellant's psychiatric records were presented at the first hearing. Appellant failed to demonstrate any change had taken place in Appellant's competency since the first hearing.

■■■ Appellant argues on appeal that the court's refusal to appoint another psychiatrist to examine the Appellant prevented him from presenting new evidence of incompetency. The Appellant, however, had already been examined by two psychiatrists who had concluded that Appellant was incompetent. They were effectively cross-examined at the first competency hearing and the jury chose to disbelieve their testimony, determining that the Appellant was in fact competent. Another psychiatric conclusion of incompetency would not be new evidence. In effect, Appellant's complaint is an attempt to appeal the jury's decision at the first hearing. Appellant's Ground of Error No. Three is overruled.

In Appellant's fourth ground of error, he asserts that the trial court abused its discretion in refusing to permit the Appellant to ask the jury panel a general question of whether they had any beliefs or opinions concerning the consequences of an insanity verdict that would affect their deliberations, thus denying the Appellant a fair opportunity to interrogate the prospective jurors in order to intelligently exercise his peremptory challenges or challenges for cause and denying him due process of law under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Texas State Constitution.

Prior to jury voir dire, the State filed a motion in limine requesting that the Appellant not go into any of the consequences of a verdict of insanity under Tex.Code Crim. Pro.Ann. art. 46.03 (Vernon 1979 and Vernon Supp.1986). Appellant asserted that he could "ask the jury panel a general question whether they have any beliefs or opinions concerning the consequences of an insanity verdict that would affect their deliberations, without going into the consequences." The court sustained the State's motion in limine and directed defense counsel not to ask such a question.

The consequences of a finding of not guilty by reason of insanity are beyond the proper scope of jury deliberation. *Granviel v. State*, 552 S.W.2d 107, 122 (Tex. Crim.App.1976), *cert den.*, 431 U.S. 933, 53 L.Ed.2d 250, 97 S.Ct. 2642 (1977); *Schuessler, supra*, (647 S.W.2d 742, at 748 [Tex. App.—El Paso 1983]). Defense counsel's suggested question would force the jurors to speculate on that which by law counsel was prohibited from explaining to the jurors. The Appellant's Ground of Error No. Four is overruled.

In Appellant's fifth ground of error, he claims that the prosecutor's argument in the guilt/innocence stage of the trial was so inflammatory and prejudicial as to render the Appellant's trial fundamentally unfair within the meaning of the due process clause of the Fourteenth Amendment to the United States Constitu-

tion and Article I, Sections 10, 13 and 19 of the Texas State Constitution.

At trial, defense counsel repeatedly objected to the State's final argument, and on numerous occasions the court instructed the jury to disregard the argument. Once defense counsel's objections were sustained, however, the prosecutor did not continue to delve into the objectionable matter. Furthermore, an instruction to the jury to disregard an improper argument generally removes any harm which may have been created. *Rudd v. State*, 616 S.W.2d 623, 624 (Tex.Crim.App.1981). Unlike the prosecutor's remarks in *Houston v. Estelle*, 569 F.2d 372 (5th Cir.1978), cited by Appellant, the prosecutor's comments in this case failed to be so prejudicial as to render the trial fundamentally unfair. Appellant points to the record which shows that of his seventeen objections to the State's argument, thirteen were sustained as showing that he had saturated the jury with objections to the point of creating possible prejudice to such extent that he abstained from further objections. We can see counsel's predicament, but he does not show what objectionable arguments were waived so that the harm can be evaluated. Without condoning the State's argument, Ground of Error No. Five is overruled.

The judgment is reversed and the cause is remanded for new trial.