Danny Lee BARBER, Appellant,

v.

The STATE of Texas, Appellee.

No. 68905.

Court of Criminal Appeals of Texas, En Banc.

Sept. 14, 1988.

---

Melvyn Carson Bruder, Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Former Dist. Atty., John Vance, Dist. Atty., and Kathi Alyce Drew, Winfield Scott, Paul Macaluso, Doug Moulder and Kelly Loving, Asst. Dist. Attys. Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION AFTER REMAND

ONION, Presiding Judge.

On original submission appellant contended, inter alia, that the trial court erred in failing to empanel a separate jury to determine his competency to stand trial. We disposed of the other points of error and abated the appeal and remanded the cause to the trial court to empanel a jury to determine whether appellant was competent to stand trial in 1980 when he was convicted of capital murder. *Barber v. State*, 737 S.W.2d 824 (Tex.Cr.App.1987).

Upon remand the trial court determined a retrospective hearing was possible and empaneled a jury which returned its verdict that appellant was competent to stand trial in 1980. Appellant now raises three points of error in connection with the conduct of the jury trial on competency. He does not challenge the sufficiency of the evidence to sustain the verdict.

Initially, appellant contends the trial court erred in denying his motion for mistrial when on cross-examination a State's witness gave an unresponsive answer which was so inflammatory and prejudicial that he (appellant) did not receive a fair competency hearing.

A competency hearing is a separate and independent hearing before a different jury than the one on the trial on the merits. *White v. State*, 591 S.W.2d 851 (Tex.Cr. App.1979). The purpose of a separate competency hearing is to allow determination of competency of the defendant to stand trial uncluttered by evidence of the offense itself. *Basham v. State*, 608 S.W.2d 677 (Tex.Cr.App.1980).

Guilt or innocence of the defendant is not an issue in a competency to stand trial hearing, and it is improper to introduce evidence of the offense itself. *Goodman v. State*, 701 S.W.2d 850, 862 (Tex.Cr.App. 1985); *Callaway v. State*, 594 S.W.2d 440 (Tex.Cr.App.1980); *Penry v. State*, 691 S.W.2d 636 (Tex.Cr.App.1985), cert. den., 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986); *McBride v. State*, 655 S.W.2d 280 (Tex.App.–Houston [14th Dist.] 1983); *Parker v. State*, 667 S.W.2d 185 (Tex.App.–Texarkana 1983), review ref'd, cert. den. 469 U.S. 1085, 105 S.Ct. 590, 83 L.Ed.2d 699 (1984), review ref'd. Evidence of the crime may adversely affect the jury's determination of the defendant's competency to stand trial by confusing the jurors or prejudicing them against the defendant. Not every mention of the crime itself will be prejudicial; to necessitate reversal evidence of the offense brought to the attention of the competency jury must be of such nature as to deny the accused a fair trial and impartial determination of his competency. *Brandon v. State*, 599 S.W.2d 567, 580 (Tex.Cr.App.1980), vacated on other grounds, 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981); *Penry*, supra; *Calloway*, supra; *McBride*, supra; *Parker*, supra.

With this background we observe that an effort was made by the trial court and the parties not to reveal to the competency jury the nature of the offense, the details or facts of the offense or the punishment. The jury did know from the evidence, however, that appellant had been tried in 1980, that the offense was a "serious offense," and that the Court of Criminal Appeals had ordered the competency hearing.

After the appellant rested, having had the burden in such a hearing (Article 46.02, V.A.C.C.P.), the State called the Honorable James Zimmerman, who as a district judge, had presided at appellant's 1980 trial. Judge Zimmerman, now in the private practice of law, testified that he had occasion at the trial to observe appellant, and his interaction with his attorneys, and that he had briefly conversed with the appellant when questions were directed to appellant personally. He related that he had, at the request of appellant's counsel, appointed two psychiatrists as disinterested experts

to examine appellant to determine his competency to stand trial, that Dr. Charles Lett had been appointed upon the recommendation of one of appellant's counsel, and that he had also appointed Dr. Clay Griffith. Judge Zimmerman related that during the trial (in absence of the jury) he had heard both doctors testify, and in response to the State's questions on direct examination Judge Zimmerman expressed his opinion that appellant was competent to stand trial in 1980 under the appropriate legal standard.

On cross-examination appellant sought to discredit the witness. After interrogating the judge about the appointment of psychiatrists generally, and more particularly in the instant case, the witness was asked if it was his understanding of the law that a district judge could appoint a psychiatrist "for the State of Texas." The witness stated that he was "not certain, frankly," because the State, in his experience usually offered a psychiatrist as a witness without the necessity of an appointment. Counsel then read to the witness from Article 46.02, § 3, V.A.C.C.P., in the presence of the jury to demonstrate the right of the prosecutor to move for the appointment of a disinterested expert. Counsel then tried to show that Judge Zimmerman's contacts during trial with the appellant had been extremely limited. The complained of answer as being unresponsive followed. The record reflects:

"Q ... Now, in Mr. Barber's trial probably by habit and custom as most trials you are, of course, while the trial is going on constantly aware of questions and parties and that the evidence that is being introduced.

"A Yes, sir.

"Q At the same time, did you not, sir, have a habit and custom, as a very experienced trial judge, also doing some other work at your bench while the events were occurring if they didn't require your direct and intense supervision at that time?

"A Not in a capital murder case.

"MR. MITCHELL (appellant's counsel): Excuse me, Judge, may we approach the bench."

Appellant's objection that the answer was non-responsive and prejudicial was sustained, and upon request the jury was instructed to disregard the last answer and not to consider it for any purpose whatsoever in its deliberations. Cross-examination of the witness ceased at this point. Appellant's mistrial motion was subsequently denied.

It must be remembered that the answer referred only to the nature of the offense, not to the facts of the case. *Goodman v. State,* 701 S.W.2d 850, 863 (Tex.Cr.App. 1985), held that "the *one use* of the term 'capital murder' did not so confuse or prejudice the jury against appellant that he was deprived of a fair determination of the matter of his competency to stand trial." (Emphasis supplied.)

Appellant acknowledges *Goodman,* but argues that the competency hearing in *Goodman* was conducted at or about the time of the trial, and the competency jury there could not have reasonably concluded Goodman had been convicted of capital murder, whereas the same was not true in the instant case. We know of no authority that the mere mention in a post-conviction competency hearing of the nature of the trial previously conducted calls for a mistrial.

In the manner in which counsel was conducting the cross-examination he should have known from the very beginning that he was skating on skinny ice. The answer given was not unresponsive to the question asked. Counsel should not have expected an unqualified affirmative answer to the particular question given the circumstances. It is here observed that the court cured any possible error by sustaining the objection and instructing the jury to disregard. Appellant's point of error is overruled. *Furtick v. State,* 592 S.W.2d 616 (Tex.Cr.App.1980). The court did not err in overruling the motion for mistrial.

■ In his second point of error concerning the competency hearing, appellant contends the trial court erred in overruling his

objection to the court's charge on the burden of proof which deprived him of due process of law and a "fair trial as guaranteed by the Fourteenth Amendment to the Constitution of the United States."

Appellant contends that the burden of proving his incompetency by a preponderance of the evidence should not have been his because of the delay of some seven and a half years between his trial and the post-conviction competency hearing. Appellant recognizes the burden of proof in a "regular" competency hearing is on the defendant and not the State, citing *White v. State*, 591 S.W.2d 851, 854 (Tex.Cr.App.1980),[1] but contends the delay through no fault of his should shift to the State (beyond a reasonable doubt) because of the passage of time. Appellant argues federal due process of law was violated because of the difficulties in the discovery of witnesses, etc. He cites no authorities calling for a shift in the burden, much less for the reason stated. As pointed out in the opinion on original submission, the trial judge carefully followed the case law of this Court interpreting Article 46.02, V.A.C.C.P., extant at the time, in passing on the issue of competency when raised during trial. The remand resulted from a later decision of this Court. See *Williams v. State*, 663 S.W.2d 832 (Tex.Cr.App.1984), which was applied retroactively. If *Williams* had been decided otherwise or had not been applied retroactively appellant would be in no position to complain. The trial court did not err in overruling the objection to the court's charge at the competency hearing. The point of error is overruled.

In his third and last point of error concerning the competency hearing appellant complains of the admission, over objection, of the testimony of Dr. Clay Griffith derived in part from a post-indictment interview with the appellant in 1980 while appellant was in custody, and when he had not been advised of his right to counsel in violation of the Sixth and Fourteenth Amendments, United States Constitution.

Prior to appellant's 1980 trial at the request of appellant's counsel the court appointed two disinterested psychiatrists to examine appellant to determine his competency to stand trial. As earlier observed Dr. Clay Griffith was one of the doctors appointed. Following two interviews with the appellant Dr. Griffith was called to testify during the 1980 trial but only before the trial judge on the issue of competency. He did not testify at either the guilt or penalty stages of appellant's 1980 trial. Prior to the instant competency hearing ordered by this Court Dr. Griffith was again appointed by the trial court to examine appellant as to his competency. At the competency hearing appellant, who had the burden of proof, offered, inter alia, the psychiatric testimony by Dr. Charles Lett. When the State offered its evidence it called Dr. Griffith. Upon objection to his testimony Dr. Griffith testified, outside the jury's presence, that after his appointment in 1980 he had examined appellant on July 24, and again on July 28, 1980, while appellant was in custody. He testified that at the first examination he advised the appellant that he did not have to make any statement and that any statements made would be used against him, and that he had the right to terminate the interview at any time. He admitted he did not advise appellant of his right to counsel prior to or during questioning. Dr. Griffith related that he had tried unsuccessfully to contact appellant's attorneys before the interview. He proceeded with the interview after the warnings and after appellant consented. At the second interview Dr. Griffith testified that appellant's counsel were present but they left before the interview was completed.

---

1. See also *Manning v. State*, 730 S.W.2d 744, 748 (Tex.Cr.App.1987). In absence of a prior unvacated finding of incompetency the burden of proving a defendant incompetent is normally on the defendant by a preponderance of evidence. See Article 46.02, supra; *Parker v. State*, 667 S.W.2d 185 (Tex.App.–Texarkana 1983) cert. den. 469 U.S. 1085, 105 S.Ct. 590, 83 L.Ed.2d 699 (1984); *Finch v. State*, 638 S.W.2d 215 (Tex. App.–Ft. Worth 1982), review dismissed, 643 S.W.2d 415 (1982); *Meraz v. State*, 714 S.W.2d 108 (Tex.App.–El Paso 1986); *Martin v. State*, 714 S.W.2d 356 (Tex.App.–Corpus Christi 1986).

Appellant's objection at the competency hearing was overruled and Dr. Griffith testified before the jury that appellant was competent in 1980 at the time of his trial.

Appellant's objection was based on *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). In *Estelle v. Smith,* supra, the Supreme Court held that where prior to the in-custody psychiatric examination ordered by the court to determine the defendant's competency to stand trial the defendant had not been warned that he had the right to remain silent, and tha'. any statement made could be used against him at the "sentencing" proceeding, admission at the penalty stage of a capital felony trial of psychiatrist's damaging testimony on the crucial issue of future dangerousness violated the Fifth Amendment privilege against compelled self-incrimination because of a lack of appraisal of rights and a knowing waiver thereof, the death penalty imposed could not stand.

The court further held that the Sixth Amendment's right to counsel was violated where defense counsel was not notified in advance that the psychiatric examination would encompass the issue of future dangerousness and there was no affirmative waiver of the right to counsel.[2]

In the instant case Dr. Griffith testified only on the issue of the appellant's competency, and he did not testify on the issue of future dangerousness or any other issue upon which the State had the burden of proof. The only objection came at the competency hearing at which appellant had the burden of proof and after he had offered psychiatric evidence to sustain that burden.

In *Estelle v. Smith,* supra, 101 S.Ct. at p. 1874, speaking through Chief Justice Burger, the Court stated:

"The fact that respondent's statements were uttered in the context of a psychiatric examination does not automatically remove them from the reach of the Fifth Amendment. See n. 6, *supra.* The state

trial judge, *sua sponte,* ordered a psychiatric evaluation of respondent for the limited, neutral purpose of determining his competency to stand trial, but the results of that inquiry were used by the State for a much broader objective that was plainly adverse to respondent. Consequently, the interview with Dr. Grigson cannot be characterized as a routine competency examination restricted to ensuring that respondent understood the charges against him and was capable of assisting in his defense. Indeed, if the application of Dr. Grigson's findings had been confined to serving that function, no Fifth Amendment issue would have arisen.

"Nor was the interview analogous to a sanity examination occasioned by a defendant's plea of not guilty by reason of insanity at the time of his offense. When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. Accordingly, several Courts of Appeals have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist. See, *e.g., United States v. Cohen,* 530 F.2d 43, 47–48 (CA5), cert. denied, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); *Karstetter v. Cardwell,* 526 F.2d 1144, 1145 (CA9 1975); *United States v. Bohle* 445 F.2d 54, 66–67 (CA7 1971); *United States v. Weiser,* 428 F.2d 932, 936 (CA2 1969), cert. denied, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971); *United States v. Albright,* 388 F.2d 719, 724–725 (CA4 1968); *Pope v. United States,* 372 F.2d 710, 720–721 (CA8 1967) (en banc), vacated and remanded on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968). (Footnote omitted.)

\*     \*     \*     \*     \*     \*

---

**2.** It must be remembered that both the Fifth and Sixth Amendments are applicable to the states by virtue of the Fourteenth Amendment. See *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969);

*Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

"A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding. Because respondent did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent and the possible use of his statements, the State could not rely on what he said to Dr. Grigson to establish his future dangerousness. If, upon being adequately warned, respondent had indicated that he would not answer Dr. Grigson's questions, the validly ordered competency examination nevertheless could have proceeded upon the condition that the results would be applied solely for that purpose. In such circumstances, the proper conduct and use of competency and sanity examinations are not frustrated, but the State must make its case on future dangerousness in some other way."

In *Battie v. Estelle,* 655 F.2d 692 (5th Cir.1981), the Court wrote:

"The use of a psychiatric or psychological examination to determine a defendant's competency to stand trial is a separate matter as far as the fifth amendment privilege is concerned and is distinct from the use of a psychiatric or psychological examination to determine the defendant's culpability or responsibility for the crimes charged against him. The State's use of the results of a competency examination does not infringe upon a defendant's fifth amendment privilege because it does not assist the State in proving any of the elements necessary to support the imposition of a criminal punishment under state law. See *Estelle v. Smith,* supra, [451] U.S. at [465–68], 101 S.Ct. at 1874–75. Had Dr. Patterson's examination been used only to determine petitioner's competency to stand trial 'no Fifth Amendment issue would have arisen.' Id. at [465], 101 S.Ct. at 1874; id. at [469], 101 S.Ct. at 1876.

"However, when the same type of examination is used to determine a defendant's culpability or responsibility for the crimes charged against him the fifth amendment privilege is involved because the use of a psychiatric or psychological examination in this context may assist the State in establishing the basis for imposition of a criminal punishment." 655 F.2d at 700–701. (Footnotes omitted.)

In *Estelle v. Smith,* supra, the Court discussed the necessity of the Sixth Amendment's right to counsel to ensure a defendant his Fifth Amendment privilege. Because "[a] layman may not be aware of the precise scope, the nuances, and the boundaries of his Fifth Amendment privilege," the assertion of that right "often depends upon legal advice from someone who is trained and skilled in the subject matter." *Maness v. Meyers,* 419 U.S. 449, 466, 95 S.Ct. 584, 595, 42 L.Ed.2d 574 (1975). It follows logically from our precedents that a defendant should not be forced to resolve such an important issue without "the guiding hand of counsel. *Powell v. Alabama,* supra, 287 U.S. at 69, 53 S.Ct. at 64." *Smith,* supra, 101 S.Ct. at 1877.

■ Since the application of Dr. Griffith's findings and testimony in the competency hearing were confined to serving only the function for which he was appointed there would appear to be no Fifth Amendment issue.

■ Of course, the claim advanced is that under the circumstances appellant's Sixth Amendment rights were violated. A Fifth Amendment claim is not urged. In resolving the question presented we have found instructive cases dealing with *Estelle v. Smith*'s Sixth Amendment right to counsel cases where the criminal defendant urges a defense of insanity at trial upon which he has the burden of proof.

In *Magwood v. Smith,* 791 F.2d 1438, 1441–1442 (11th Cir.1986), the Court wrote:

"Magwood first contends that he was denied his sixth amendment right to counsel when Dr. Cooper and Dr. Crook examined him, without notice to counsel, pursuant to a court order and later testified *at trial* to rebut Magwood's insanity defense. The source of this argument is

*Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), in which the Supreme Court of the United States held that an accused who had not raised the issue of his mental competency possesses fifth amendment and sixth amendment rights during a court-ordered psychiatric examination if testimony by the examining psychiatrist is offered against the accused *at trial.*" (Other authorities cited omitted.) (Emphasis supplied.)

After distinguishing *Smith* on the facts the *Magwood* court held that the use of the testimony of the doctors originally appointed to determine competency on the defense of insanity at trial did not violate Magwood's Sixth Amendment rights, observing that *Cape v. Francis,* 741 F.2d 1287, 1297 (11th Cir.1984), cert. den., 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 245 (1985), held that the resolution of *Estelle v. Smith*'s Sixth Amendment claim "turns on the actual *use* at trial" of the psychiatric testimony. (Emphasis in original).

In *Vardas v. Estelle,* 715 F.2d 206, 208–209 (5th Cir.1983), the Court held that where the petitioner pleaded and pursued an insanity defense at trial his Sixth Amendment right to counsel was not violated by failure of the State to provide his counsel with notice of the psychiatric examinations. In *Vardas* the Court wrote:

"In *Estelle v. Smith, supra,* 101 S.Ct. at 1876–77, the Supreme Court held that the right to counsel was violated when the psychiatrist examined the defendant during a 'critical stage' of the proceedings, and defense counsel was not notified in advance that the psychiatric examination would encompass the issue of defendant's future dangerousness. The rationale provided by the Court for this holding was that 'respondent was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed.' 101 S.Ct. at 1877. Unlike Vardas, however, the defendant in *Smith* did not assert an insanity defense. When a defendant asserts such a defense, he can be compelled to submit to an examination by a psychiatrist nominated by the state. *United States v. Cohen, supra,* 530 F.2d at 47. We agree with the state that by pursuing this defense, an accused necessarily had already made the 'significant decision' regarding the psychiatric evaluation, and cannot now complain that he was denied the effective assistance of counsel prior to the examination because he was unable to consult with his attorney as to whether to submit to a psychiatric examination. Moreover, by pursuing the insanity defense, Vardas put himself on constructive notice that the state court could, and probably would, permit the state to conduct its own psychiatric evaluation. Tex. Crim.Proc.Code Ann. § 46.03(3)(a) (Vernon 1966)." 715 F.2d at 210–211.

In *United States v. Byers,* 740 F.2d 1104 (D.C.Cir.1984), it was held that the Sixth Amendment right to counsel did not attach to questioning of defendant, who had raised insanity defense, by court-appointed psychiatrist where the defendant was not confronted by the procedural system and had no decisions in the nature of legal strategy or tactics to make when he underwent the examination and where the defendant was provided with assistance of counsel before he decided to raise the insanity defense and before he decided to introduce psychiatric testimony on his own behalf at trial.

As earlier noted, a competency hearing is separate and distinct from a trial on the merits. *White v. State,* 591 S.W.2d 851 (Tex.Cr.App.1979). Here, Dr. Griffith was originally appointed as a disinterested expert to determine appellant's competency to stand trial. He made two pre-trial and post-indictment examinations of the appellant on the issue of competency alone. He filed a report with the court finding appellant competent. Dr. Griffith later testified without objection at a competency hearing before the trial judge alone conducted during the course of appellant's 1980 trial. He never testified on the issue of "criminal responsibility" or on any issue upon which the prosecution had the burden of proof. Prior to the instant competency hearing before a jury Dr. Griffith was again ap-

pointed as a disinterested expert by a different district judge. At the said competency hearing where the appellant had the burden of proof and had introduced psychiatric testimony Dr. Griffith was called by the State to rebut the earlier defense testimony. The objection was on the basis of *Estelle v. Smith,* supra, and because at the initial examination in 1980 the appellant, although warned, was not warned as to his right to counsel even though the doctor had attempted to contact counsel prior to the first examination or interview. Given the circumstances, it cannot be said that appellant's counsel was surprised by Dr. Griffith's testimony. Further, the testimony was limited in scope to the issue of competency. Unlike *Smith* the doctor did not testify on the issue of future dangerousness and other issues at trial upon which the State had the burden of proof and which was outside the scope of intended examination. Under the facts of this case appellant's Sixth and Fourteenth Amendments were not infringed. See and cf. *Patterson v. State,* 654 S.W.2d 825, 827–829 (Tex.App.–Dallas 1985), rev. ref'd.

Even if it can be argued that there was a Sixth Amendment violation given the circumstances of this case, we observe that the United States Supreme Court only recently in *Satterwhite v. Texas,* — U.S. ——, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), held the admission of psychiatric testimony in violation of the Sixth Amendment right set out in *Estelle v. Smith* may be harmless error. The harmless error test, however, for such a federal constitutional error is that of *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967). The test is that for such error to be harmless the prosecution must prove beyond a reasonable doubt that such federal constitutional error did not contribute to the "verdict." Normally "verdict" has reference to the conviction and punishment at the trial on the merits.[3] Under any circumstances we are able to declare

beyond a reasonable doubt that any error in the separate and distinct competency hearing was harmless beyond a reasonable doubt.

The judgment is affirmed.

MILLER, J., concurs in the result.

---

3. See and cf. Texas Rules of Appellate Procedure, Rule 81(b)(2), which provides:

"Criminal Cases. If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."