In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-00359-CR


____________________



JEFFREY CLAY LASITER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 06-01-00706-CR






 OPINION


 A jury found Jeffrey Clay Lasiter mentally competent to stand trial, and Lasiter
subsequently pled guilty to first degree murder. See Tex. Pen. Code Ann. §19.02 (Vernon
2003). The trial court assessed punishment at life imprisonment in the Institutional Division
of the Texas Department of Criminal Justice. On appeal, Lasiter challenges the jury's
finding that determined him competent to stand trial, and he asserts that several errors
occurred during his competency trial. Lasiter also contends that the trial court erred in
denying his post-trial motions. We affirm.

Background

 Lasiter followed Kasey Davis's vehicle from a parking lot to an apartment complex
and then shot Davis at close range with a deer rifle. The two had never previously met. 
After shooting Davis, Lasiter walked to his truck and drove away from the scene. Soon
thereafter, a Conroe police officer stopped Lasiter's truck because it matched the description
of the truck involved in the parking-lot shooting. After exiting his truck, Lasiter admitted
to the officer that he shot a man and explained that he believed Davis was a member of the
"CIA and the FBI" that had harmed Lasiter's family. Lasiter also stated that he was a servant
of God, apologized to God, and requested the officer take him to jail.

 While jailed, Lasiter drank an extraordinary amount of water and sustained a
significant brain injury. The injury caused Lasiter to lose consciousness and to be placed on
life support for a short time. Because of the brain injury, Lasiter's permanent injuries
included a speech impairment.

 After Lasiter's condition improved, the State requested a competency examination. 
The trial court ordered that Lasiter submit to an examination by Dr. Steven Rosenblatt, who
subsequently examined Lasiter twice. Following the second examination, Dr. Rosenblatt
composed his March 7, 2007, written report, expressing his opinion that Lasiter was not
currently competent to stand trial. Dr. Rosenblatt's written report notes that after his first
examination, he had concluded that Lasiter was competent for trial.

 In March 2007, the trial court conducted a jury trial on the competency issue. 
Following a two-day trial, a jury found Lasiter mentally competent to stand trial. Dr. Victor
Scarano, Lasiter's expert, and Dr. Rosenblatt testified during the competency trial. Although
each physician's opinion had a different basis, both physicians testified that Lasiter was not
competent to stand trial.

 The jury also heard testimony from several witnesses with whom Lasiter had
interacted while in jail awaiting trial. In general, these witnesses described how they could
communicate with Lasiter. They explained that Lasiter appeared to comprehend the
situations in which each of them dealt with him.

 The jury found Lasiter competent to stand trial. Following the jury's verdict, the trial
court denied all relief requested by Lasiter in several post-trial motions. On May 7, 2007,
Lasiter pled guilty to the offense of murder and then waived his right to have a jury assess
his punishment.

 A videotape depicting the stop and arrest and several letters written by Lasiter to his
parents were admitted into evidence during the punishment phase of Lasiter's trial. At the
conclusion of the trial, the trial court imposed a life sentence. Lasiter subsequently filed a
motion for new trial, which was overruled by operation of law. Lasiter raises five issues in
his appeal.

Complaints Regarding Admission of Evidence of the Alleged Offense


 In issue one, Lasiter argues that during the competency trial, the State's attorney
revealed facts of the crime with which Lasiter was charged. Lasiter also asserts that the State
suggested to the jury that he would receive a less severe punishment if the jury found him 
incompetent to stand trial.

Standard of Review

 Generally, a competency hearing is a separate and independent hearing from the trial
on the crime charged in the indictment. Tex. Code Crim. Proc. Ann. art. 46B.005 (Vernon
2006); Barber v. State, 757 S.W.2d 359, 361 (Tex. Crim. App. 1988). "The purpose of a
separate hearing is to allow a determination uncluttered by evidence of the offense itself." 
Basham v. State, 608 S.W.2d 677, 679 (Tex. Crim. App. 1980). The guilt of the defendant
is not an issue in the competency hearing, and, generally, introducing evidence of the alleged
offense is improper. See Goodman v. State, 701 S.W.2d 850, 862-63 (Tex. Crim. App.
1985), overruled on other grounds by Hernandez v. State, 757 S.W.2d 744, 751-52 n.15
(Tex. Crim. App. 1988); Callaway v. State, 594 S.W.2d 440, 443 (Tex. Crim. App. 1980);
McBride v. State, 655 S.W.2d 280, 284 (Tex. App.-Houston [14th Dist.] 1983, no pet.). 

 However, not every mention of the crime itself is prejudicial; to be prejudicial, "[t]he
evidence of the offense presented to the competency jury must be of such a nature as to deny
the accused a fair and impartial determination of his competency." Brandon v. State, 599
S.W.2d 567, 580 (Tex. Crim. App. 1979), vacated on other grounds, 453 U.S. 902, 101 S.Ct.
3134, 69 L.Ed.2d 988 (1981).

Application of Law to Facts


 First, we address whether Lasiter preserved the complaints he makes in his first issue
for our review. In his brief, Lasiter complains about the State's attorney's comment during
the cross-examination of Dr. Rosenblatt that Lasiter was potentially "lying about his lack of
recall of the shooting incident to boost his 'competency defense[.]'" Lasiter also complains
about the State's attorney's suggestion in closing argument that incompetency was Lasiter's
"only defense" and of the State's argument that the jury should find Lasiter competent and
make him stand trial for murder.

 Before the competency trial, the trial court conducted a hearing on Lasiter's motion
in limine in which Lasiter requested that no evidence of Lasiter's offense be admitted into
evidence. The State responded that it intended to cross-examine the experts about the
offense to show Lasiter's motive for feigning incompetency. The trial court stated that it
would address any objections to the State's cross-examination about the offense during trial. 

 During trial, Lasiter did not lodge an objection when the State's attorney questioned
Dr. Rosenblatt about why Lasiter might claim to be incompetent. Lasiter also failed to object
to the State's attorney's comments regarding Lasiter's effort to use incompetency as a
defense during the State's closing argument.

 Generally, a defendant must object at trial to preserve error for review. Basham, 608
S.W.2d at 679. "[T]he denial of a motion in limine is simply not sufficient. There must be
a proper objection to the proffered evidence." Id. By not objecting at trial, Lasiter failed to
preserve these complaints for our review. See Tex. R. App. P. 33.1(a); Basham, 608 S.W.2d
at 679. 

 Lasiter also did not object when the State's attorney asked Dr. Scarano about the
crime with which Lasiter had been charged; in response to the question, Dr. Scarano
answered: "Charged with murder." Later, Lasiter did object when, in reply to the State's
attorney's inquiry regarding the facts of the case, Dr. Scarano agreed they were "[e]xtremely
serious."

 We hold that by not objecting to the question about the crime with which he had been
charged, Lasiter failed to preserve his complaint as to the question or to Dr. Scarano's
response for our review. With respect to Dr. Scarano's statement that the facts of the case
were "[e]xtremely serious," Lasiter's brief acknowledges that the "mere mention that the
offense was a 'serious offense' would not necessitate reversal[.]" We further note that
appellate courts have stated that during a competency trial, the mention that the offense was
capital murder, does not necessarily deprive a defendant of a fair determination of his
competency. See Goodman, 701 S.W.2d at 863; see also Barber, 757 S.W.2d at 362. We
hold that Dr. Scarano's express acknowledgment that the facts were extremely serious did
not deprive Lasiter of a fair determination of whether he was competent to stand trial. 

 Lasiter also did not preserve error with respect to several questions inferring that
being in a state hospital would be better than going to prison. Because no error was
preserved on these questions, we likewise overrule Lasiter's complaints about them. See
Tex. R. App. P. 33.1(a); Basham, 608 S.W.2d at 679. 

 Finally, Lasiter complains about several comments made by the State's attorney
during a bench conference. During the bench conference, the State asserted that Lasiter was
"malingering," and that the evidence would show that Lasiter killed "an unarmed
innocent-[.]" Lasiter claims the jury heard these statements, but the record does not reflect
that Lasiter's attorney requested either a mistrial or an instruction from the judge for the jury
to disregard these comments. Absent a request to the trial court to cure the alleged error, no
error was preserved for our review. See Young v. State, 137 S.W.3d 65, 70 (Tex. Crim. App.
2004). Having reviewed the arguments Lasiter makes in issue one, and finding them either
not preserved or without merit, we overrule Lasiter's first issue.



Challenge to Jury's Competency Finding

 In issue two, Lasiter asserts that the jury's finding him competent to stand trial is
against the great weight and preponderance of the evidence. Lasiter argues he was
incompetent to stand trial because both medical experts who testified agreed that he did not
possess sufficient present ability to consult with his attorney with a reasonable degree of
rational understanding.

Standard of Review

 Texas law presumes a defendant competent and a defendant bears the burden of
proving he was incompetent by a preponderance of the evidence. Tex. Code Crim. Proc.
Ann. art. 46B.003(b) (Vernon 2006). A person is incompetent to stand trial if he does not
have:

 (1) sufficient present ability to consult with the person's lawyer
with a reasonable degree of rational understanding; or


 (2) a rational as well as factual understanding of the proceedings
against the person.

 

Id. at 46B.003(a) (Vernon 2006). When a defendant challenges a jury finding on which he
bears the burden of proof, "the correct standard of review is whether after considering all the
evidence relevant to the issue at hand, the judgment is so against the great weight and
preponderance of the evidence so as to be manifestly unjust." Meraz v. State, 785 S.W.2d
146, 155 (Tex. Crim. App. 1990); Morris v. State, 214 S.W.3d 159, 165 (Tex.
App.-Beaumont 2007, pet. granted). We are mindful that in reviewing a fact finder's
resolution of an issue, "[t]he jury is the judge of the credibility of the witnesses at the
competency hearing and the weight to give to the testimony. The jury [may] accept or reject
all or any of a witness's testimony. It is the exclusive province of the jury to resolve
conflicts." Williams v. State, 191 S.W.3d 242, 248 (Tex. App.-Austin 2006, no pet.); see
also Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

The Competency Trial

 During the competency trial, seven witnesses testified: Lasiter called two and the
State called five. Both witnesses called by Lasiter were physicians. Dr. Rosenblatt, a board-
certified psychiatrist appointed by the trial court, testified that he met with Lasiter twice, once
on July 30, 2006, and again on March 5, 2007. Dr. Rosenblatt testified that, currently, his
opinion was that Lasiter was not competent to stand trial. Nonetheless, Dr. Rosenblatt
acknowledged that following his first examination of Lasiter, he felt that Lasiter was
competent.

 Dr. Rosenblatt explained the similarities and differences between his two
examinations to explain why he changed his opinion concerning Lasiter's competence. The
similarities are described as follows. During both examinations, Dr. Rosenblatt stated that
Lasiter "had a reasonable understanding of the legal system, including the nature of what
goes on in a courtroom, who the jury are, what the judge does, the prosecutor, defense
attorney, things of that nature." Also, during both examinations, Dr. Rosenblatt felt that
Lasiter was cooperative, listened carefully, exhibited little emotion, and while difficult to
understand, he was understandable. On both occasions when Dr. Rosenblatt examined him,
Lasiter told Dr. Rosenblatt that he could not recall the specifics of the incident that led to his
arrest, but that he was aware of the charge against him.

 With respect to the differences between the two examinations, Lasiter told Dr.
Rosenblatt that he could assist in his defense during the first examination. Yet in the second
exam, Lasiter said he did not know whether he could assist in his defense. In addition, Dr.
Rosenblatt stated that during his second exam, he and Lasiter discussed a handwritten letter
found on Lasiter, but not in Lasiter's writing. According to Dr. Rosenblatt, the letter, which
was not introduced into evidence, expressed "hyper religious content and rambling content
which had a paranoid flavor to it . . . ." Dr. Rosenblatt stated that although he struggled with
the question of Lasiter's competence, the content of the letter "kind of tipped my opinion in
the direction of [Lasiter's] not being competent to stand trial . . . ." Dr. Rosenblatt indicated
that his opinion that Lasiter was incompetent was based on his impression that Lasiter was
suffering from a psychotic thought process. Dr. Rosenblatt acknowledged that he did not
base his opinion on Lasiter's speech impairment or upon Lasiter's failure to exhibit more
emotion during the two examinations.

 Dr. Scarano, a board-certified psychiatrist and licensed attorney, was the only other
expert who testified during the competency hearing. Dr. Scarano met with Lasiter for
approximately four hours on October 12, 2006. He reviewed many of Lasiter's medical
records, police records, and spoke to Lasiter's parents and former spouse. During the
competency trial, Dr. Scarano testified that Lasiter was not competent to stand trial because
of the significant brain damage he suffered after his February 2006 arrest. Dr. Scarano
explained that Lasiter drank an extraordinary amount of water that resulted in extreme
swelling of his brain and caused the brain injury. Dr. Scarano relied on CT scans and
electrolyte studies performed during Lasiter's hospitalization that objectively showed a brain
injury. According to Dr. Scarano, Lasiter had a factual understanding of the proceedings
against him but did not have a rational understanding of the proceedings, and Lasiter could
not assist in his defense. In Dr. Scarano's opinion, because of Lasiter's brain injury, he could
not "track what's going on in the courtroom because he can't process information fast
enough." Dr. Scarano further explained:

 [T]he brain damage that Mr. Lasiter has suffered doesn't allow
him to really grasp the magnitude of his brain injury. So he
doesn't understand how much damage occurred to him at the
time he was taken to Conroe hospital with this brain swelling. 
Therefore, if he lacks insight, he can make judgments that would
not be in his best interest.


Lasiter, in Dr. Scarano's opinion, "doesn't have the brain capacity now to be able to engage
in a reasoned choice of legal strategies and options." Consequently, "his attorney would
wind up being a guardian of sorts, trying to decide what would be best for Mr. Lasiter rather
than having Mr. Lasiter participate."

 Dr. Scarano also described the results of an intelligence test that he administered. 
Lasiter scored in the lower average range, but based on Lasiter's educational background,
Dr. Scarano expected Lasiter, a college graduate, to score higher. With respect to Lasiter's
recovery from the brain injury, Dr. Scarano testified that Lasiter probably improved in the
first six to eight months after the injury, but Dr. Scarano expected no further improvement.

 Dr. Scarano was also asked about Dr. Rosenblatt's testimony. In response, Dr.
Scarano testified that he "absolutely disagree[d]" with Dr. Rosenblatt. According to Dr.
Scarano, Lasiter was not psychotic at the time he evaluated Lasiter. Although Lasiter could
respond to questions, in Dr. Scarano's opinion, Lasiter's brain damage rendered him
incompetent to testify and unable to assist his attorney. Thus, Dr. Scarano concluded that
Lasiter was not competent to stand trial.

 In presenting evidence to show that Lasiter was competent, the State presented
testimony from several persons who had interacted with Lasiter while he was in jail. Rosalyn
Donaldson, an officer with the Montgomery County Sheriff's Office, handles disciplinary
issues that occur in the jail. In October 2006, Lasiter received a "disciplinary writeup" for
"a major infraction of hoarding medication." Donaldson testified that instead of undergoing
a hearing on his violation, Lasiter pled guilty to the infraction and accepted probation. In
Donaldson's presence, Lasiter executed a document to indicate his decision on how he
wanted to proceed on the charge. Donaldson explained that Lasiter even apologized to her
for his messy writing because he was shaking. In Donaldson's opinion, Lasiter
comprehended the disciplinary proceeding. Donaldson also testified that she understood
Lasiter "perfectly when he spoke" to her and "he made eye contact as well."

 Glen Clandar, the jail's food service director, explained how inmates place orders for
snack items from the commissary. To do so, the inmate must complete a "Scantron" sheet,
which includes the inmate's name, "PIN" number, and the item number and quantity for each
item ordered. The items are selected from an order guide containing items available for
inmates to order. Clandar testified that Lasiter routinely orders items with no known
problems. Clandar also stated that he and the other employees do not assist inmates with
their orders. However, Clandar did not know if other inmates had helped Lasiter when he
placed his commissary orders.

 A night supervisor for the jail testified that Lasiter was housed with the jail's general
population and that he kept a "very organized" cell compared with other inmates. Next, one
of the jail's medics explained that he frequently administered medication to Lasiter. The
medic testified that Lasiter could communicate his needs and had caused no problems. The
medic agreed that Lasiter's ability to communicate had neither improved nor declined in the
past six months. The last witness, a detention officer, stated that she had direct contact with
Lasiter when she placed handcuffs on him to bring him to the courthouse. She testified that
when asked whether the handcuffs were too tight, Lasiter responded that they were fine. She
further testified that Lasiter was quiet and stayed to himself and that she had no problems
communicating with him.

 The trial court provided the jury with instructions on the burden of proof applicable
to a competency trial and the legal meaning of "incompetency." The jury subsequently
rejected Lasiter's claim of incompetency.

Application of Law to Facts

 Lasiter contends that the evidence is insufficient to support the jury's competency
finding because the "greater weight of the evidence consisted of the opinions of [the] two
experts" who testified he was incompetent to stand trial.

 We note that while both experts opined that Lasiter was not competent, the reasons
for their conclusions differed significantly. Dr. Rosenblatt's opinion was based on his belief
that Lasiter had present symptoms of a psychotic thought process; he rejected the claim that
Lasiter's brain injury rendered Lasiter incompetent. In the absence of the presence of
psychotic thoughts, Dr. Rosenblatt had previously reached the opinion that Lasiter was
competent. Dr. Scarano, on the other hand, testified that Lasiter was "not psychotic" during
his meeting with him and attributed Lasiter's incompetency to his brain injury.

 In reaching its verdict, the jury may have relied partly upon the tests that Dr. Scarano
administered to Lasiter that showed that Lasiter scored (1) average on a test for intelligence,
(2) average in a test of common modes of behavior in society, (3) twenty-three out of thirty
points on a mini-mental exam, and (4) normal in a similarities test. While Lasiter did not
answer the number of questions correctly on a math exam that would be expected of a college
graduate with a business degree, he scored average for his age group. Dr. Scarano
additionally acknowledged that Lasiter's responses were rational. Dr. Scarano also agreed
that a lack of memory about the events surrounding an offense would not render a person
incompetent.

 In summary, the jury in this case was faced with conflicting evidence. Dr. Scarano
opined that Lasiter's brain injury rendered him incompetent while Dr. Rosenblatt disagreed
that the brain injury affected Lasiter's competency. Dr. Rosenblatt based his opinion that
Lasiter was incompetent on Lasiter's letter because he believed it revealed that Lasiter was
suffering from psychotic thoughts; Dr. Scarano disagreed and, based on his examination, did
not believe that Lasiter suffered from a psychotic thought process. On this record, the jury
may have believed that Lasiter was not currently suffering from psychotic thought, agreeing
in part with Dr. Scarano, and that Lasiter's brain injury did not render him incompetent,
agreeing in part with Dr. Rosenblatt. 

 Here, the jury determined the issue involving whether Lasiter was competent to stand
trial. In general, juries are free to believe or disbelieve all or part of a witness's testimony. 
The Court of Criminal Appeals has repeatedly held: "The jury may believe some witnesses
and refuse to believe others and it may accept portions of the testimony of a witness and
reject other portions." Esquivel v. State, 506 S.W.2d 613, 615 (Tex. Crim. App. 1974); see
also Wesbrook, 29 S.W.3d at 111; Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986). The discretion afforded a jury's determination of credibility of witness testimony
extends to competency trials. Williams, 191 S.W.3d at 248; Clark v. State, 47 S.W.3d 211,
215 (Tex. App.-Beaumont 2001, no pet.).

 Moreover, a jury resolves conflicts in evidence by weighing testimony and then
rejecting any or all of a witness's testimony. See Williams, 191 S.W.3d at 248; see also
Wesbrook, 29 S.W.3d at 111. In this case, the jury resolved the conflicts in the experts'
respective opinions and chose to believe that Lasiter was not psychotic and that his brain
injury did not render him unable to assist in his defense. The record also contains other
evidence, such as Lasiter's performance on intelligence tests, which the jury may have used
to reject Lasiter's claim that he was not competent. We conclude that the jury's rejection of
Lasiter's claim of incompetency was not so against the great weight and preponderance of
the evidence as to make the jury's finding manifestly unjust. See Meraz, 785 S.W.2d at 155.
We overrule Lasiter's second issue.

Lasiter's Post-Competency-Hearing Motion


 In issue three, Lasiter complains that the trial court erred in denying his motion for
judgment notwithstanding the verdict filed after the jury found him competent to stand trial. 
He also complains about the trial court's failure to hold an evidentiary hearing on his motion
for new trial following his competency hearing. Although found competent by the jury,
Lasiter argues that the evidence that he was not competent to stand trial was compelling. 
Additionally, he argues that a hearing was required because his attorney's affidavit raised a
new claim that Lasiter was "presently operating under psychotic thoughts. . . ."

 Generally, a trial court's duty to decide a defendant's competency encompasses
resolving issues that arise before trial and those that are "raised after the trial on the merits
begins[.]" Tex. Code Crim. Proc. Ann. arts. 46B.004(a), (b), 46B.005(d) (Vernon 2006);
see McDaniel v. State, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003) (discussing prior version
of the competency statute). (1) Whenever the evidence is brought to the judge's attention, a
non-jury "informal inquiry" is "required only if the evidence brought to the judge's attention
raises a bona fide doubt in the judge's mind about the defendant's competency to stand trial." 
McDaniel, 98 S.W.3d at 710; (2) see also Tex. Code Crim. Proc. Ann. art. 46B.004(c)
(Vernon 2006). 

 Here, Lasiter reasserted the issue of his competency following the conclusion of his
first competency hearing. When Lasiter reasserted a claim of incompetency, the issue
nevertheless remained the same: whether the evidence that accompanied Lasiter's request
for a second competency hearing raised a bona fide doubt about Lasiter's continued
competency to stand trial that would require the trial court to conduct an informal inquiry to
determine the need for another jury competency determination. Tex. Code Crim. Proc.
Ann. art 46B.004(c); see also McDaniel, 98 S.W.3d at 710. 

 Evidence sufficient to support a finding that a defendant may be incompetent may
come from several sources, including the trial court's own observations, known facts,
evidence presented, motions, affidavits, or any other claim or credible sources. Clark, 47
S.W.3d at 217. "A bona fide doubt is 'a real doubt in the judge's mind as to the defendant's
competency'"[;] evidence sufficient to create a bone fide doubt is that which shows a
"'recent severe mental illness, at least moderate retardation, or truly bizarre acts by the
defendant.'" Fuller v. State, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008), cert. denied, 129
S.Ct. 904, 173 L.Ed. 120, 77 U.S.L.W. 3397 (citations omitted). If a bona fide doubt exists,
the trial court must conduct an informal inquiry to determine whether some evidence
supports a finding of incompetency and a need to commence a competency hearing before
a jury. Fuller, 253 S.W.3d at 228; McDaniel, 98 S.W.3d at 710; see also Tex. Code Crim.
Proc. Ann. art. 46B.004(c); Tex. Code Crim. Proc. Ann. art. 46B.005(a), (b) (Vernon
2006). 

 Appellate courts review a trial court's decision not to conduct a competency inquiry
for an abuse of discretion. Greene v. State, 225 S.W.3d 324, 328 (Tex. App.-San Antonio
2007, no pet.); Lawrence v. State, 169 S.W.3d 319, 322 (Tex. App.-Fort Worth 2005, pet.
ref'd); Brown v. State, 129 S.W.3d 762, 765 (Tex. App.-Houston [1st Dist.] 2004, no pet.);
see also Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). In reviewing the
record to determine whether sufficient evidence raised a bona fide doubt about Lasiter's
competency to stand trial, and considering the evidence that accompanied Lasiter's post-competency hearing motion, we are mindful that we should "'afford almost total deference
to a trial court's determination of the historical facts that the record supports especially when
the trial court's fact findings are based on an evaluation of credibility and demeanor.'" 
McDaniel, 98 S.W.3d at 713 n.28 (quoting Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997)). Therefore, we review the record to determine whether the trial court abused
its discretion in denying Lasiter's post-competency-hearing motion. 

Lasiter's Post-Competency-Hearing Motion

 In his motion, Lasiter argued that the jury reached the wrong result in finding him
competent because both experts, Dr. Rosenblatt and Dr. Scarano, agreed that he was
incompetent to stand trial. Dr. Rosenblatt's and Dr. Scarano's written reports, dated before
the competency hearing, along with copies of their curricula vitae, are attached to the post-competency-hearing motion. The motion also contains an affidavit from Lasiter's trial
counsel concerning Lasiter. The attorney's affidavit discusses a post-competency-hearing
meeting that occurred on March 25, 2007; Lasiter's attorney concluded: 

 After reading his statement, I believe Lasiter is also suffering
from psychosis in addition to brain damage. I do not personally
and/or professionally think Lasiter can consult with me with a
reasonable degree of rational understanding. I cannot
understand him and his writings show that he is delusional. His
delusional state of mind leads me to believe he does not
understand me to a reasonable degree of rational understanding. 
 

The "statement" to which the attorney referred consisted of Lasiter's handwritten note
incorporated into the affidavit that stated:

 Jesus Christ is acusing me of worshiping Satan

 I must have a lie detitor test to prove that 

 I was not doing You will save my soul by doing this for me 
Will you do that for me[?]



Application of Law to Facts


 At the point that Lasiter filed his post-competency-hearing motion, the trial court was
already aware of Lasiter's attorney's allegation that Lasiter presently suffered from psychotic
thoughts. Both Dr. Rosenblatt and Dr. Scarano had recently testified and expressed differing
opinions about Lasiter's claim that he suffered from psychotic thoughts. While their reports
were not offered or admitted into evidence at the competency hearing, both experts were
thoroughly examined about their respective opinions during the hearing. Based on the
evidence addressing Lasiter's claim that he suffered from psychotic thoughts, the judge, like
the jury, was entitled to conclude that Lasiter was not presently suffering from psychotic
thoughts. In summary, the reports add nothing new to the testimony that had addressed
Lasiter's competency during the competency hearing. Under these circumstances, the trial
court could reasonably conclude that the written reports did not raise a bona fide doubt about
Lasiter's competency.

 When placed in the context of evidence previously admitted during the competency
hearing, the affidavit of Lasiter's trial attorney also fails to raise a bona fide doubt about
Lasiter's competency. For example, the affidavit states that Lasiter remained the same as he
was when he underwent his competency hearing. Trial counsel's opinion that Lasiter was
suffering from psychosis and brain damage was based on Lasiter's written statement that he
felt he had been wrongfully accused of worshiping Satan. While this statement occurred
after Lasiter's competency hearing, it does not differ significantly from the statements made
by Lasiter that were in evidence during the competency hearing. Rosenblatt testified that a
letter found on Lasiter's person during an evaluation had "a lot of hyper religious content and
rambling content which had a paranoid flavor to it." In Dr. Rosenblatt's opinion, these
statements represented Lasiter's "underlying psychotic thought content." Dr. Rosenblatt
specifically stated that he formulated his opinion regarding Lasiter's competency based on
the letter. 

 We conclude that Lasiter's written note to his attorney, tending to show that he
believed himself to be an object of persecution, provided nothing more than cumulative
evidence similar to other statements discussed during Lasiter's competency hearing. The jury
had previously rejected this type of evidence as either not credible or insufficient to make
Lasiter incompetent. The trial court was free to reach the same conclusions about Lasiter's
claim that he was suffering from psychotic thoughts.

 We conclude that the trial court could reasonably determine that Lasiter's post-competency-hearing motion did not create a bona fide doubt as to his competency. See
Fuller, 253 S.W.3d at 228; Clark, 47 S.W.3d at 218. Therefore, we find that the trial court
did not abuse its discretion in denying Lasiter's post-competency-hearing motion. See
Greene, 225 S.W.3d at 328; Lawrence, 169 S.W.3d at 322; Brown, 129 S.W.3d at 765; see
also Moore, 999 S.W.2d at 393. We overrule Lasiter's third issue.Plea and Punishment Proceedings


 Lasiter argues in issue four that the trial court should have conducted "a second
competence hearing before proceeding with [Lasiter's] plea and punishment . . . ." Except
for his request for another competency hearing in his post-competency-hearing motion, the
record does not reflect that Lasiter's attorney requested an additional competency hearing
during the plea or punishment proceedings. Nevertheless, where evidence raises a bona fide
doubt as to a defendant's competency, a trial court, sua sponte, has a duty to conduct an
informal inquiry or an informal competency hearing to determine whether to commence a
formal competency hearing in the presence of a jury. See Fuller, 253 S.W.3d at 228;
McDaniel, 98 S.W.3d at 710; see also Tex. Code Crim. Proc. Ann. art. 46B.004(c); Tex.
Code Crim. Proc. Ann. art. 46B.005(a), (b). Therefore, we review Lasiter's additional
arguments to determine whether, at this stage, the trial court erred in failing to sua sponte
conduct a second competency hearing. 

 Lasiter's plea and punishment hearings, beginning on May 7, 2007, were conducted
by a different judge than the one who conducted Lasiter's competency hearing. Before
accepting Lasiter's guilty plea, Lasiter, with the assistance of his counsel at various times,
answered the trial court's questions directed at determining whether his plea was knowing
and voluntary. The trial court questioned Lasiter and his counsel about Lasiter's prior mental
health diagnoses. At that point, Lasiter's counsel expressed his opinion that Lasiter's
"mental issues" interfered with Lasiter's ability to consult with counsel. However, Lasiter's
counsel also stated that "Mr. Lasiter has articulated to me that he wants to plead guilty and
that he wants to go forward with the proceeding because the jury has already found him
competent to stand trial." After Lasiter confirmed that he had assisted his counsel with the
decision to plead guilty, Lasiter's counsel agreed and stated: 

 In terms of -- that's correct, Your Honor. In terms of the legal
strategy, he is able to discuss with me his desire to plead guilty. 
And then his desire to waive a jury trial. And to also, in terms
of punishment, to elect the judge, you, to determine punishment
as opposed to a jury. That is the extent of his ability to
communicate with me in terms of legal strategy.


Lasiter also told the trial judge that he understood who represented him and who represented
the State. The trial court specifically noted that Lasiter "exhibited appropriate courtroom
behavior." Additionally, Lasiter's prior competency finding, while not controlling, is another
consideration in determining whether the trial court should have sua sponte granted an
additional competency hearing. See Clark, 47 S.W.3d at 217.

 While being questioned and before pleading guilty, Lasiter wrote a note requesting
a lie detector test. Lasiter's counsel informed the trial court that Lasiter's request did not
relate to the choices before Lasiter that particular day, but explained that Lasiter believed a
lie detector test would show that he was not worshiping Satan. The record reflects that
Lasiter's counsel continued to maintain that Lasiter was not competent, but Lasiter's attorney
agreed that Lasiter appeared to understand the admonishments the court had given him,
recognized that he had certain rights, and appreciated the consequences of giving up those
rights and entering a plea. Lasiter's counsel further acknowledged that his opinion that
Lasiter remained incompetent was based on the same facts developed during Lasiter's first
competency hearing. Lasiter's counsel added that, "for the record[,] . . . [Lasiter] was able
to articulate reasons why he chose to plead guilty and also to choose his election for
punishment."

 Although the record of the guilty plea hearing reflects a significant impairment in
Lasiter's ability to communicate orally, it also reflects that the trial judge asked multiple
questions to assist her in evaluating Lasiter's competency. Lasiter also initialed a written
document that states that he understood the proceedings. By initialing each paragraph in the
document, Lasiter acknowledged he was mentally competent, he understood the nature of the
charges and the admonishments given to him, and that he understood the consequences of
his plea.

 The record contains additional evidence that Lasiter understood the nature of the
proceedings. For example, he signed a "Stipulation of Evidence." In it, Lasiter stipulated
that he intentionally and knowingly caused Davis's death by shooting him. Before pleading
guilty, Lasiter indicated to the trial court that he had read and understood the stipulation. 
Lasiter then pled guilty and advised the trial court that no one had forced him to plead guilty. 
Thus, before accepting Lasiter's plea, the record reflects that the trial judge made a
significant effort to satisfy herself that Lasiter was competent.

 On this record, we do not accept Lasiter's argument that the trial court had a duty
during the guilty plea proceeding to sua sponte order additional competency proceedings. 
The record is sufficient to show that Lasiter understood the nature of the charge and the
consequences of his guilty plea.

 Lasiter also contends the trial court should have sua sponte ordered additional
competency proceedings based upon developments during the punishment proceeding. To
support his claim that he was psychotic during the punishment proceeding, Lasiter relies in
part on the video made of the stop on the night of the shooting. Lasiter also argues that his
mother's testimony about his family's history of mental illness, her concerns about his mental
health at various stages in his life, and her efforts to get him help should have created a doubt
in the trial court's mind as to Lasiter's competency. However, Lasiter's mother also testified
to his improvement after the offense:

 Right now, I'm not afraid of him. I feel like he's more-a little
bit better shape now. He's still-there is only one thing. He's
got this one thing on the brain about the Lord, and every letter
he writes has the same thing in it. That's the only thing that's
pushing on his brain right now that he needs some medicine for. 
 

 

 The relevant time frame for determining a person's competency is at the time of the
proceedings, not the time of the offense. See generally Morris, 214 S.W.3d at 168-69. Thus,
the issue before the trial court was not whether Lasiter was competent at the time of the
offense; instead, the issue was whether Lasiter was competent during the May 2007
proceedings. 

 Based on the record of the proceedings before us, it does not appear that Lasiter's
competency had deteriorated after his first competency hearing. See Fuller, 253 S.W.3d at
228-29; Clark, 47 S.W.3d at 218. We conclude that Lasiter failed to demonstrate that the
trial court abused its discretion in not, sua sponte, ordering a second competency hearing. See
Fuller, 253 S.W.3d at 228; Clark, 47 S.W.3d at 217-18. We overrule Lasiter's fourth issue.

Denial of Lasiter's Motion for New Trial without Holding a Hearing

 In his fifth issue, Lasiter complains that the trial court did not hold an evidentiary
hearing on his post-judgment motion for new trial. We first address the standard of review
we apply to review a complaint that the trial court failed to provide an evidentiary hearing. 
 Courts of appeals have traditionally applied the same standard of review to motions
for new trial raising competency claims as they have applied to motions raising more general
types of issues. See Beltran v. State, No. 12-06-00390-CR, 2007 Tex. App. LEXIS 9337, at
**3-4 (Tex. App.-Tyler Nov. 30, 2007, pet. dism'd) (not designated for publication); Hill v.
State, No. 2-06-094-CR, 2007 Tex. App. LEXIS 2272 , at *14 (Tex. App.-Fort Worth, Mar.
22, 2007, pet. ref'd) (not designated for publication), cert. denied, 128 S.Ct. 1267, 170
L.Ed.2d 99, 76 U.S.L.W. 3440 (2008); De La Cruz v. State, Nos. 01-04-00176-CR, 01-04-00177-CR, 01-04-00178-CR, 2005 Tex. App. LEXIS 1534, at *12-13 (Tex. App.-Houston
[1st Dist.] Feb. 24, 2005, pet. ref'd) (not designated for publication). (3) However, our court
has previously noted that the Texas Court of Criminal Appeals might apply a bona fide doubt
standard to competency issues raised in a motion for new trial. Durgan v. State, 259 S.W.3d
219, 222-24 (Tex. App.-Beaumont 2008, no pet.); see also Durgan v. State, 240 S.W.3d 875,
878 (Tex. Crim. App. 2007). Recently, and without discussing the potential implications of
the Texas Court of Criminal Appeals opinion in Durgan, two intermediate courts of appeals
applied the traditional standard of review to competency issues raised in motions for new
trial and held that a bona fide doubt standard did not apply. See Powell v. State, No. 03-07-00548-CR, 2008 Tex. App. LEXIS 6230, at *10 (Tex. App.-Austin Aug. 14, 2008, no pet.)
(not designated for publication); Ceasar v. State, Nos. 01-07-00769-CR, 01-07-01028-CR,
2008 Tex. App. LEXIS 4996, at *8 (Tex. App.-Houston [1st Dist.] July 3, 2008, no pet.) (not
designated for publication). 

 Nevertheless, we believe that the Court of Criminal Appeals would apply a bona fide
doubt standard to competency issues raised in motions for new trial. Citing Cooper v.
Oklahoma, 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), the Durgan Court
stated that a defendant's competency at the time of an adjudication hearing "raises a
preliminary due-process issue that must be resolved before the adjudication process may
begin." Durgan, 240 S.W.3d at 878. The Court additionally noted certain facts brought forth
at the new trial hearing that supported a conclusion that would raise a bona fide doubt. See
id. at 876. As we understand the implications of the opinion of the Court of Criminal
Appeals in Durgan, we conclude that the bona fide doubt standard applies to the competency
issues raised in Lasiter's motion for new trial.

The Motion for New Trial and Its Accompanying Affidavit

 In his post-judgment motion for new trial, Lasiter argued that new evidence
concerning his competency necessitated an inquiry into whether he was competent during his
plea and punishment proceedings. (4) The evidence attached to Lasiter's motion consisted of
his letter to the trial judge, file-marked "Received" by the trial court on May 25, 2007, and
an affidavit by Ellen Brown, an assistant to Lasiter's newly appointed appellate attorney,
Kaye Stone.

 In his letter to the trial court, Lasiter again expressed his desire to have a lie detector
test to prove that he was not worshiping Satan to "save his soul." Because the trial court
could determine that this was the same type of request that it had previously found
insufficient to support further competency proceedings, it could reasonably conclude that the
letter did not raise a bona fide doubt as to Lasiter's competency. 

 Lasiter additionally argues that further competency proceedings were required based
on Brown's affidavit, which discusses a meeting with Lasiter that she attended with Stone
on June 1, 2007. The affidavit reflects that Brown and Stone had difficulty understanding
Lasiter because of his profound speech impairment. Nonetheless, the affidavit also reflects
that Lasiter directed his appellate counsel to file a motion for new trial. The affidavit further
reflects that Lasiter told Brown and Stone that he wanted to take a lie detector test because
he believed that "only a lie detector test will prove to Jesus that he doesn't worship Satan." 
 As with Lasiter's letter to the court, we conclude that the affidavit does not raise a
bona fide doubt about Lasiter's competency during the plea and punishment proceedings. 
The trial court was already aware of Lasiter's stated desire to take a lie detector test and his
reasons for it. On this record, we find that the trial court could reasonably conclude that this
additional request for a lie detector test did not create a bona fide doubt about Lasiter's
competency during the relevant trial proceedings that resulted in his conviction and sentence.
While the affidavit also identifies a difficulty in Brown's and Stone's ability to communicate
with Lasiter, the trial court was also aware of Lasiter's communication problem, as well as
Dr. Rosenblatt's opinion that this problem did not make him incompetent. Thus, given the
similarity between this evidence and the evidence Lasiter used to support his claim of
incompetency during the competency hearing, we find the trial court could reasonably
conclude that Lasiter's post-judgment motion for new trial failed to create a bona fide doubt
about Lasiter's competency during the plea and punishment proceedings. See Fuller, 253
S.W.3d at 228; see also Durgan, 259 S.W.3d at 224. 

 We hold the trial court did not abuse its discretion in failing to order an evidentiary 
hearing on Lasiter's motion for new trial, and we overrule Lasiter's fifth issue. Having found
all of Lasiter's issues either waived or without merit, we affirm the order of the trial court.

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on November 6, 2008

Opinion Delivered April 15, 2009

Publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Article 46.02 of the Texas Code of Criminal Procedure was repealed, and the Code
of Criminal Procedure was amended by adding "Chapter 46B. Incompetency to Stand Trial." 
See Act of April 30, 2003, 78th Leg., R.S., ch. 35, §§ 1, 15, 2003 Tex. Gen. Laws 57, 58, 72.
2. The change in the law did not result in an alteration of the process discussed in
McDaniel v. State, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003), regarding the need for a
bona fide doubt to arise in the trial court's mind before it is required to conduct an informal
or "competency" inquiry. Compare Act of May 29, 1975, 64th Leg., R.S., ch. 415, § 1, 1975
Tex. Gen. Laws 1095, 1095-1096, with Tex. Code Crim. Proc. Ann. art. 46B.004(c)
(Vernon 2006).
3. See Durgan v. State, 259 S.W.3d 219, 222 n.2 (Tex. App.-Beaumont 2008, no pet.)
(commenting that despite the 2003 statutory changes to the competency statutes, discussed
in detail therein, the above-cited courts continued to apply the traditional motion for new trial
standard to incompetency issues raised in the motion).
4. Lasiter's post-judgment motion for new trial asserted arguments about other grounds
to grant a new trial; however, these arguments were not argued on appeal. Thus, we address
only those arguments made by Lasiter in his brief. See Tex. R. App. P. 38.1(h).